## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOONG CHEE MIN, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>LONGFIN CORP., VENKAT S. MEENAVALLI, and VIVEK KUMAR RATAKONDA,<br><br>                              Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Loong Chee Min ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Longfin Corp. ("Longfin" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Longfin; and (c) review of other publicly available information concerning Longfin.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of all persons and entities that purchased or otherwise acquired Longfin common stock between December 15, 2017 and April 2, 2018, inclusive (the "Class Period").  Plaintiff pursues claims under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Longfin purportedly operates as a finance and technology company, and the Company recently acquired Ziddu.com to enable global trade through the use of blockchain technology.

3.      On December 15, 2017, the Company published a press release announcing the acquisition of Ziddu.com, stating in relevant part:

> Longfin Corp. (LFIN:Nasdaq) announces the acquisition of Ziddu.com, a Blockchain technology empowered solutions provider that offers Microfinance Lending against Collateralized Warehouse Receipts in the form of Warehouse Coins to small and medium enterprises (SMEs), processors, manufacturers, importers and exporters using crypto currencies across continents.
>
> Ziddu Warehouse Coin is a smart contract that enables Importers and Exporters to use their Ziddu coins that are loosely pegged to Ethereum and Bitcoin Crypto Currency. The Importers/Exporters convert offered Ziddu coins into Ethereum

and Bitcoin Cryptocurrencies and use the proceeds for their working capital needs.

*** 

Businesses of all sizes continue to struggle in accessing sufficient credit, resulting in a global trade finance gap of US$1.5 trillion in 2016, according to an Asian Development Bank (ADB). Access to financing is the biggest impediment to small farmers in African countries and other frontier markets. Overall, African micro and SMEs face a financing shortfall of about US$190 billion from the traditional banking sector. African firms are 19% less likely to obtain a bank loan compared to other regions of the world. Hard-currency shortage is forcing companies to get creative with crypto currencies such as Bitcoin and Ethereum as an alternative to US Dollars in many emerging markets.

"The advent of Blockchain technology has caught the imagination of the global financial services industry; blockchain is emerging as a technological revolution that we believe is set to disrupt the financial services infrastructure. Crypto currencies such as Bitcoin and Ethereum are expected to act as a global financing currency to avail credit against hard currencies of many emerging markets." Says Venkat Meenavalli, Chairman of Longfin Corp. [sic]

Ziddu intends to use blockchain technology to transform the lives of millions of SME's by providing finance by way of Ziddu coins and through Crypto Currencies such as Ethereum and Bitcoin against their collateralized warehouse receipts. At the end of the contract, Importers/Exporters are expected to realize their proceeds and pay back their funds through Crypto Currencies only. Depending upon the risk profile of the counterparty, the interest will vary between 12% to 48%.

4.     On this news shares of Longfin jumped over 300% on December 15, 2017 and another 228% on December 18, 2017, in total an increase of $72.38 per share.

5.     Then, on March 26, 2018, Citron Research ("Citron") issued a statement questioning the truthfulness of Longfin's operations, and whether the Company operated a viable trading platform. That same day, FTSE Russel ("Russel") issued a statement announcing that Longfin would be removed from its global indices after market close on March 28, 2018, only 12 days after the Company was added to the Russel indices.

CLASS ACTION COMPLAINT
2

6.    On this news, Longfin's share price fell over $11 per share on March 26, 2018 to close at $59.28 per share, a drop of nearly 17%. The stock continued to decline over the next trading sessions, closing on April 2, 2018 at $14.31 per share, for a total decline of $61.21 per share since the stock's close on March 23, 2018.

7.    On March 2, 2018, the Company disclosed that the SEC was investigating the Company, and had requested certain documents relating to the Company's IPO and the acquisition of Ziddu.com.

8.    On this news the Company's shares fell $4.42 per share, or over 30%, to close at $9.89 per share on April 3, 2018.

9.    Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company had material weaknesses in its operations and internal controls; (2) the Company did not meet the requirements for inclusion in the Russel indices; and (3) that, as a result of the foregoing, the Company's financial statements and Defendants' statements about Longfin's business, operations, and prospects, were materially false and misleading at all relevant times.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. §78aa).

13.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  A significant portion of Defendants' actions, and the subsequent damages, took place in this Judicial District.  Additionally, Longfin's principal executive offices are located within this Judicial District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Longfin stock during the Class Period and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Longfin Corp. is incorporated in Delaware and its principal executive offices are located in New York, New York.  Longfin's common stock trades on the NASDAQ Stock Market (the "NASDAQ") under the symbol "LFIN."

17.     Defendant Venkat Srivinas Meenavalli ("Meenavalli") was the Chairman and Chief Executive Officer ("CEO") of Longfin at all relevant times.

18.     Defendant Vivek Kumar Ratakonda ("Ratakonda") was the Chief Financial Officer ("CFO") of Longfin at all relevant times.

19.     Defendants Meenavalli and Ratakonda are collectively referred to hereinafter as the "Individual Defendants."   The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Longfin's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.   Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.   The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

20.     Longfin purportedly operates as a finance and technology company, and the Company recently acquired Ziddu.com to enable global trade through the use of blockchain technology.

21.     On December 15, 2017, the Company published a press release announcing the acquisition of Ziddu.com, stating in relevant part:

> Longfin Corp. (LFIN:Nasdaq) announces the acquisition of Ziddu.com, a Blockchain technology empowered solutions provider that offers Microfinance Lending against Collateralized Warehouse Receipts in the form of Warehouse Coins to small and medium enterprises (SMEs), processors, manufacturers, importers and exporters using crypto currencies across continents.

Ziddu Warehouse Coin is a smart contract that enables Importers and Exporters to use their Ziddu coins that are loosely pegged to Ethereum and Bitcoin Crypto Currency. The Importers/Exporters convert offered Ziddu coins into Ethereum and Bitcoin Cryptocurrencies and use the proceeds for their working capital needs.

*** 

Businesses of all sizes continue to struggle in accessing sufficient credit, resulting in a global trade finance gap of US$1.5 trillion in 2016, according to an Asian Development Bank (ADB). Access to financing is the biggest impediment to small farmers in African countries and other frontier markets. Overall, African micro and SMEs face a financing shortfall of about US$190 billion from the traditional banking sector. African firms are 19% less likely to obtain a bank loan compared to other regions of the world. Hard-currency shortage is forcing companies to get creative with crypto currencies such as Bitcoin and Ethereum as an alternative to US Dollars in many emerging markets.

"The advent of Blockchain technology has caught the imagination of the global financial services industry; blockchain is emerging as a technological revolution that we believe is set to disrupt the financial services infrastructure. Crypto currencies such as Bitcoin and Ethereum are expected to act as a global financing currency to avail credit against hard currencies of many emerging markets." Says Venkat Meenavalli, Chairman of Longfin Corp. [sic]

Ziddu intends to use blockchain technology to transform the lives of millions of SME's by providing finance by way of Ziddu coins and through Crypto Currencies such as Ethereum and Bitcoin against their collateralized warehouse receipts. At the end of the contract, Importers/Exporters are expected to realize their proceeds and pay back their funds through Crypto Currencies only. Depending upon the risk profile of the counterparty, the interest will vary between 12% to 48%.

22.     On this news shares of Longfin jumped over 300% on December 15, 2017 and another 228% on December 18, 2017, in total an increase of $72.38 per share.

### Materially False and Misleading
### Statements Issued During the Class Period

23.     On December 15, 2017, the Company published a press release announcing the acquisition of Ziddu.com, stating in relevant part:

Longfin Corp. (LFIN:Nasdaq) announces the acquisition of Ziddu.com, a Blockchain technology empowered solutions provider that offers Microfinance

Lending against Collateralized Warehouse Receipts in the form of Warehouse Coins to small and medium enterprises (SMEs), processors, manufacturers, importers and exporters using crypto currencies across continents.

Ziddu Warehouse Coin is a smart contract that enables Importers and Exporters to use their Ziddu coins that are loosely pegged to Ethereum and Bitcoin Crypto Currency. The Importers/Exporters convert offered Ziddu coins into Ethereum and Bitcoin Cryptocurrencies and use the proceeds for their working capital needs.

*** 

Businesses of all sizes continue to struggle in accessing sufficient credit, resulting in a global trade finance gap of US$1.5 trillion in 2016, according to an Asian Development Bank (ADB). Access to financing is the biggest impediment to small farmers in African countries and other frontier markets. Overall, African micro and SMEs face a financing shortfall of about US$190 billion from the traditional banking sector. African firms are 19% less likely to obtain a bank loan compared to other regions of the world. Hard-currency shortage is forcing companies to get creative with crypto currencies such as Bitcoin and Ethereum as an alternative to US Dollars in many emerging markets.

"The advent of Blockchain technology has caught the imagination of the global financial services industry; blockchain is emerging as a technological revolution that we believe is set to disrupt the financial services infrastructure. Crypto currencies such as Bitcoin and Ethereum are expected to act as a global financing currency to avail credit against hard currencies of many emerging markets." Says Venkat Meenavalli, Chairman of Longfin Corp. [sic]

Ziddu intends to use blockchain technology to transform the lives of millions of SME's by providing finance by way of Ziddu coins and through Crypto Currencies such as Ethereum and Bitcoin against their collateralized warehouse receipts. At the end of the contract, Importers/Exporters are expected to realize their proceeds and pay back their funds through Crypto Currencies only. Depending upon the risk profile of the counterparty, the interest will vary between 12% to 48%.

24.    On this news shares of Longfin jumped over 300% on December 15, 2017 and another 228% on December 18, 2017, in total an increase of $72.38 per share.

25.    On December 19, Longfin engaged in a widespread publicity campaign to tout Longfin's financial prospects and the viability of its blockchain platform, including with Defendant Meenavalli's  appearance on CNBC and through a Company spokesperson stating to

*Bloomberg* that, "We are not going to make revenue from Ziddu.com this year [2017], but it will account for 5-10 percent of revenue next year [2018]."

     26.    On January 23, 2018, Longfin issued a press release entitled, "LFIN US: Multibillion Dollar Fund to Invest $52.7 million into Longfin Corp." The press release provided in relevant part:

> Longfin Corp. ("Longfin" or the "Company") a leading global FinTech company, has announced that the Company has entered into a securities purchase agreement with a multibillion dollar fund. The institutional investor is investing $52,700,000 through convertible note instruments (the "Notes"). A press release regarding the transaction was previously issued prior to finalization of the documentation earlier today, and the Company is confirming the transaction is proceeding on the terms indicated below.

>     Joseph Gunnar & Co., LLC is acting as placement agent.

>     Key Transaction Details

> The Notes consist of (i) Series A Senior Convertible Notes in the aggregate principal amount of $10,095,941.18 and (ii) Series B Senior Secured Convertible Notes in the aggregate principal amount of $42,604,058.82. The nature of the investment will involve (i) an upfront cash payment in the amount of $5,000,000, and (ii) secured promissory notes payable by the investors to the Company in the aggregate principal amount of $42,604,058.82 (referred to below as the "Investor Notes"). Under the Investor Notes, the Investors are required to prepay the Investor Notes to the Company in two equal installments following the registration of all of the shares underlying the Investor Notes and warrants issued together with the Investor Notes.

> Longfin is one of the few players in the global FinTech space in alternative finance and shadow banking, a $72 trillion industry worldwide.

> "To secure funding from this large institutional investor at current market valuation will enhance the visibility and revenue growth of the company in a rapid way. We are confident in our goal of reaching a 250% revenue growth rate organically, and outnumbering our growth rate in 2017. This funding will also help Longfin in its acquisition endeavors within the Blockchain powered Smart Contracts and FinTech space across the globe," stated Venkat S Meenavalli, Chairman and CEO of Longfin Corp.

On March 16, 2018, the global indices operator Russell added Longfin to the Russell 2000 Index and the Russell 3000 Index (the "Indices"), as part of Russell's quarterly additions of companies with recent initial public offerings. Russell's policy and guidelines  requires that an issuer's free float be at least 5% of its shares outstanding.

27.     And, on March 22, 2018, the Company published a press release announcing Longfin's inclusion into the Russell 2000 Index, stating in relevant part:

> Russell indices are widely used by investment managers and institutional investors for both index funds and as benchmarks for passive and active investment strategies in the U.S. marketplace.
>
> The Russell 3000® Index measures the performance of the largest 3,000 U.S. companies, representing approximately 98% of the investable U.S. equity market. The Russell 2000® Index measures performance of the small-cap segment of the U.S. equity market and is a subset of the Russell 3000® Index.
>
> Venkat S Meenavalli, Chairman and CEO of Longfin, says "We are pleased that Longfin is included in the Russell 2000® Index. We believe that this inclusion reflects the stockholder value we are building and will help increase Longfin's visibility within the investment community."

28.     The above statements identified in ¶¶23-28 were materially false and/or misleading when made because Defendants failed to disclose: (1) that the Company had material weaknesses in its operations and internal controls; (2) the Company did not meet the requirements for inclusion in the Russel indices; and (3) that, as a result of the foregoing, the Company's financial statements and Defendants' statements about Longfin's business, operations, and prospects, were materially false and misleading at all relevant times.

## Disclosures at the End of the Class Period

29.     On March 26, 2018, Citron Research ("Citron") issued a statement questioning the truthfulness of Longfin's operations, and whether the Company operated a viable trading platform. That same day, FTSE Russel ("Russel") issued a statement announcing that Longfin

would be removed from its global indices after market close on March 28, 2018, only 12 days after the Company was added to the Russel indices.

30.    On this news, Longfin's share price fell over $11 per share on March 26, 2018 to close at $59.28 per share, a drop of nearly 17%.

31.    On March 26, 2018, after the market closed, Russell issued a statement entitled, "Longfin Corp (USA): Constituent Deletion Changes in Russell Global Index Series," therein Russell stated that since Longfin failed to meet the minimum 5% free float requirement the stock would be removed from the index.

32.    On March 27, 2018, in an article published by CNBC, Defendant Meenavalli was quoted as saying:

> "We are reapplying" for inclusion in the indexes, Longfin CEO Venkat Meenavalli told CNBC in a phone interview Tuesday. He said the stock's free float has increased above the minimum 5 percent as of March 11 due to the expiration of a lockup period on a consultant's stock holdings.
>
> As for Citron's negative view, "we are going to take legal action after we file the 10-K" in the next three days, Meenavalli said. "The company is a profitable company, making revenue."

33.    On this news shares of Longfin continued to decline, falling $24.60 per share, or 41%, to close at $34.68 per share on March 27, 2018. Longfin shares continued to decline over the following three trading sessions, closing down $20.37 per share, or nearly 60%, to close at $14.31 on April 2, 2018.

34.    Then, On April 2, 2018, the Company disclosed in its annual report that the SEC was investigating the Company, and had requested certain documents relating to the Company's IPO and the acquisition of Ziddu.com.

35.    On this news the Company's shares fell $4.42 per share, or over 30%, to close at $9.89 per share on April 3, 2018.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Longfin securities between December 15, 2017 and April 2, 2018, inclusive, seeking to pursue remedies under the Exchange Act; and who were damaged thereby (collectively, the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

37.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Longfin's securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Longfin shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Longfin or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Longfin ; and

(c)     whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## **UNDISCLOSED ADVERSE FACTS**

43.     The market for Longfin's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Longfin's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Longfin's securities relying upon the integrity of the market price of the Company's securities and market information relating to Longfin, and have been damaged thereby.

44.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Longfin's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Longfin's business, operations, and prospects as alleged herein.

45.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Longfin's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## **LOSS CAUSATION**

46.    Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

47.    During the Class Period, Plaintiff and the Class purchased Longfin's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

48.    As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Longfin, his/her control over, and/or receipt and/or modification of Longfin's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Longfin, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

49.    The market for Longfin's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Longfin's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Longfin's securities and market information relating to Longfin, and have been damaged thereby.

50.    During the Class Period, the artificial inflation of Longfin's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Longfin's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Longfin and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

51.     At all relevant times, the market for Longfin's securities was an efficient market for the following reasons, among others:

(a)     Longfin stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Longfin filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Longfin regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Longfin was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

52.     As a result of the foregoing, the market for Longfin's securities promptly digested current information regarding Longfin from all publicly available sources and reflected such information in Longfin's stock price. Under these circumstances, all purchasers of Longfin's securities during the Class Period suffered similar injury through their purchase of Longfin's securities at artificially inflated prices and a presumption of reliance applies.

53.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

54.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking

statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Longfin  who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against the Company and the Individual Defendants)

55.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.    During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Longfin's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

57.    the Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Longfin's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the

Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Longfin's financial well-being and prospects, as specified herein.

59.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Longfin's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Longfin and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

60.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and

familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

61.     The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Longfin's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

62.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Longfin's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the

absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired Longfin's securities during the Class Period at artificially high prices and were damaged thereby.

63.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Longfin was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Longfin  securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

64.     By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.     The Individual Defendants acted as controlling persons of Longfin within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the

Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

69.     As set forth above, Longfin and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Federal Rules of Civil Procedure 23;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 4, 2018                              **GLANCY PRONGAY & MURRAY LLP**


By:  *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
230 Park Ave., Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email:  lportnoy@glancylaw.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**

**LONGFIN CORP. SECURITIES LITIGATION**

I, Loong Chee Min individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.    I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.    I did not purchase the Longfin Corp. securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.    My transactions in Longfin Corp. securities during the Class Period set forth in the Complaint are as follows:

      (See attached transactions)

5.    I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

2nd APRIL 2018
_____
Date

_____
Loong Chee Min

**Loong Chee Min's Transactions in
Longfin Corp. (LFIN)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 12/19/2017 | Bought | 11,000 | $59.5500 |
| 12/28/2017 | Bought | 6,300 | $55.0000 |